# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIMBERLY-CLARK WORLDWIDE, Inc., and ,
KIMBERLY-CLARK GLOBAL SALES, LLC,

        Plaintiffs,

v.                                                    Case No. 10-C-0917

FAMECCANICA DATA SpA,

        Defendants.

## MEMORANDUM AND ORDER

On October 14, 2010, Plaintiffs Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC, (collectively "K-C") filed this action for patent infringement against Defendant Fameccanica.Data S.p.A (hereinafter "Fameccanica") alleging that Fameccanica indirectly infringed various patents K-C holds relating to disposable training pants and the production thereof. Presently before the Court is Fameccanica's motion to dismiss for lack of personal jurisdiction (Dkt. 7) which will be granted for the reasons set forth herein.

## BACKGROUND

Fameccanica is a corporation organized and existing under the laws of Italy. (Declaration of Giampiero De Angelis, Dkt. 12 at ¶ 2.) Fameccanica's principal place of business is in Italy where the company designs and manufactures machinery for the production of baby diapers, training pants, feminine hygiene, and adult incontinence products. (*Id.* at ¶¶2-3.) Fameccanica sold such

machinery to First Quality Baby Products LLC (First Quality), a Delaware company headquartered in New York and with a production facility located in Pennsylvania. (Fameccanica Br., Dkt. 11 at 3.) First Quality uses the Fameccanica machinery to produce disposable training pants. First Quality sells its disposable training pants to major retailers throughout the United States and some of the retailers sell the product in Wisconsin.

K-C is organized and exists under the laws of the State of Delaware, and has manufacturing, research, sales and marketing offices and facilities in Neenah, Wisconsin. (Compl. ¶ 1.) K-C has a lawsuit currently pending in this Court against First Quality. *See Kimberely-Clark Worldwide, Inc. et al. v. First Quality Baby Products, LLC et al.,* No. 09-cv-916 (E.D. Wis.). In that suit K-C alleges that First Quality's manufacturing process infringes on various K-C patents.

K-C's suit against Fameccanica is related. It alleges that Fameccanica provided the high speed manufacturing equipment that First Quality uses to mass produce the allegedly infringing refastenable training pants. In the suit K-C alleges that:

> This Court has personal jurisdiction over [Fameccanica] because, inter alia, Defendant supplies First Quality Baby Products, LLC and First Quality Retail Services, LLC (collectively, "First Quality") with manufacturing equipment that First Quality uses to infringe K-C's asserted patents, including by making refastenable training pants, which are sold in, distributed to, and shipped into the Eastern District of Wisconsin. On information and belief, Defendant knew that the accused refastenable training pants are sold in, distributed to, and shipped into this judicial district. On information and belief, Defendant undertook at least some of its infringing activities knowing that a patent infringement suit (09-C-916) was already pending in this judicial district against First Quality, and further knowing that as a result of Defendant's indemnification obligations to First Quality, Defendant's infringing activities could subject Defendant to liability and/or suit in this district, and Defendant voluntarily sent a manager to this jurisdiction to testify live at a proceeding in that suit (09-C-916). Further, Defendant has done and is doing business in Wisconsin and in this judicial district, including by offering to sell, selling, and shipping equipment in this district.

2

(Compl. ¶ 5.) It is this jurisdictional issue that Fameccanica challenges and that the Court now turns to.

## ANALYSIS

Once the issue of jurisdiction is raised, the plaintiff has the burden of demonstrating the existence of personal jurisdiction under the state's long-arm statute. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996). This burden, however, is not a heavy one, as a plaintiff need only make a prima facie showing of personal jurisdiction. *See Johnson Worldwide Assoc., Inc. v. Brunton Co.,* 12 F. Supp.2d 901, 906 (E.D. Wis. 1998). The pleadings and affidavits should be viewed in a light most favorable to the plaintiff. *Kinetic Co., Inc. v. BDO EOS Svetovanje,* 361 F. Supp.2d 878, 880 (E.D. Wis. 2005). All inferences about material jurisdictional facts should be resolved in favor of the plaintiff. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003.) This Court applies Federal Circuit law to decide a question of personal jurisdiction in a patent infringement case. *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether the long-arm statute of the forum (in this case Wisconsin) permits the assertion of jurisdiction, and (2) whether assertion of personal jurisdiction violates due process. *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359-60 (Fed. Cir. 2001). Fameccanica challenges jurisdiction only under the second prong of this inquiry. (Fameccanica's Br., Dkt. 11 at 6-7). Fameccanica's failure to make any argument under the first prong constitutes a waiver. *See, e.g., United States v. Dabney,* 498 F.3d 455, 460 (7th Cir. 2007) (arguments not raised or developed in

3

opening brief are waived). Therefore, the sole question before this Court is whether personal jurisdiction over Fameccanica violates due process.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The concept of minimum contacts protects such a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "[T]here must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), *citing Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). But even if minimum contacts are present, it does not follow that due process is satisfied. This is because "[t]he strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [a party] under circumstances that would offend traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotes omitted).

Supreme Court cases draw a distinction between "general" and "specific" jurisdiction. General jurisdiction – which is broader – exists where the defendant has "continuous and systematic" contacts with the forum state. If general jurisdiction is lacking, a court may still exercise specific jurisdiction where: (1) a defendant purposefully directed its activities at the forum;

(2) the complaint arises out of or relates to those activities; and (3) so long as the assertion of personal jurisdiction is reasonable and fair. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1362-63 (Fed. Cir. 2006); *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 (Fed. Cir. 1999).

Here Fameccanica is not subject to general jurisdiction because it does not have continuous and systematic contacts with Wisconsin. Fameccanica is not registered to do business in Wisconsin and has no regular or established place of business in Wisconsin (De Angelis Decl.¶ 4); Fameccanica does not regularly conduct business in Wisconsin (*Id.* ¶ 5); It has no offices, no retail outlets, and no distribution centers, order centers or manufacturing facilities in Wisconsin (*Id.*); Fameccanica owns or leases no real estate or other property, has no telephone listings, and maintains no bank accounts in Wisconsin (*Id.* ¶ 6); and Fameccanica has no regular employees, agents, or distributors that reside in Wisconsin. (*Id.* ¶ 7.) In light of these facts K-C does not contend that general jurisdiction is appropriate; instead K-C argues that Fameccanica is subject to specific jurisdiction. K-C also argues that jurisdiction is proper under the *Calder* effects test and under a "stream of commerce" theory.

**1. Specific Personal Jurisdiction**

K-C argues that Fameccanica has purposefully directed its actions at Wisconsin residents, and that K-C's claims arise out of or relate to Fameccanica's Wisconsin activities. (K-C Br., Dkt. 19 at 10-14). K-C quotes *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.,* 682 F. Supp. 2d 1237, 1246 (D. Colo. 2010) for the proposition that "a defendant purposely directs indirectly infringing activities at a state when the defendant knows that the direct infringement occurred in that forum and has had some role in inducing or producing the combination of components that constitute such

infringement." Fameccanica distinguishes *Alcohol Monitoring* by highlighting the difference between products physically located in the forum state and products physically located elsewhere. In *Alcohol Monitoring*, the defendant's own product was sold in the forum. *Id.* Here, Fameccanica's machines have never been located in Wisconsin and are, in that sense, different from First Quality's training pants products, which are sold in Wisconsin. Fameccanica's position is that "[p]urposeful availment does not exist in the present case because Fameccanica's accused machinery has not been sold in Wisconsin." (Reply Br., Dkt. 25 at 2.) Fameccanica argues that its *own* products lack a connection with Wisconsin and that it has no knowledge of, or control over, where First Quality distributes training pants.

But K-C points out that Fameccanica necessarily knew of K-C's Wisconsin lawsuit against First Quality because Fameccanica employees provided testimony in preliminary injunction hearings in that case. K-C argues that Fameccanica "must have reasonably anticipated being hailed into this Court" by "voluntarily participating in judicial proceedings before this Court in an attempt to invalidate K-C's patents". (K-C Br., Dkt. 19 at 13.) K-C also argues that Fameccanica assisted First Quality in designing around K-C's process patents after this Court issued its May 20, 2010 preliminary injunction order in the K-C/First Quality lawsuit. According to K-C, Fameccanica's actions related to the suit between K-C and First Quality demonstrate that Fameccanica played a significant role in "inducing and contributing" to First Quality's alleged infringement. (K-C Br., Dkt 19 at 11-12.)

K-C asks this Court to deny Fameccanica's motion to dismiss, and, alternatively, K-C has asked this Court to allow K-C to take jurisdictional discovery. Specifically K-C seeks discovery related to: the extent of Fameccanica's knowledge of First Quality's activities in Wisconsin, the

circumstances surrounding Fameccanica employees testifying in Wisconsin; Fameccanica's efforts to redesign First Quality machines after May 20, 2010; communications between Fameccanica and First Quality regarding the redesigned machinery and sale of products made by that equipment; and Fameccanica's knowledge of K-C's patent rights when Fameccanica sold equipment to First Quality. (K-C Br., Dkt. 19 at 21-22.) Fameccanica argues that the discovery K-C requests will not lead to evidence that could change the existing record. I agree with Fameccanica.

"A plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdictional issue" but "a plaintiff's discovery request will nevertheless be denied if it is only based upon bare, attenuated, or unsupported assertions of personal jurisdiction, or when a plaintiff's claim appears to be clearly frivolous." *Owner Operator Resources, Inc. v. Maag* 2003 WL 21911061, *5 (N.D. Ind. 2003). "Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir. 2000). Here I conclude that jurisdictional discovery is not necessary because the evidence K-C seeks will not change the fact that Fameccanica has not purposefully targeted Wisconsin. To illustrate that point the Court makes the following five assumptions in line with K-C's requested discovery :

(1) Fameccanica knew that First Quality manufactured training pants using Fameccanica's machines. Fameccanica knew that First Quality then sold the training pants throughout the United States and, in particular, in Wisconsin;

(2) Fameccanica was aware of the lawsuit K-C filed in the Eastern District of Wisconsin against First Quality. Fameccanica was also aware that Mr. De Angelis' and Mr. Pasqualoni traveled to Wisconsin to testify in that litigation;

7

>(3) Fameccanica worked to redesign First Quality's equipment in an effort to design around K-C's patent;
>
>(4) Fameccanica was aware that First Quality would use the redesigned machine to produce training pants, some of which would be sold in Wisconsin;
>
>(5) When Fameccanica first sold machinery to First Quality, the Italian company represented and warranted that it had put forth reasonable effort to research and explore potential conflicts with third party intellectual property rights.

Even when making these assumptions this Court concludes that it lacks specific personal jurisdiction over Fameccanica. Simply because Fameccanica was aware of First Quality's sales in Wisconsin does not mean that Fameccanica purposely availed itself of the benefits and protections of doing business in Wisconsin. Ostensibly Fameccanica was aware that First Quality sells its products throughout the United States and, relevant here, in Wisconsin. Following K-C's position to its logical conclusion leads to an improper result: Fameccanica's knowledge of First Quality's sales throughout the United States would mean Fameccanica has purposefully availed itself of doing business in every state where First Quality's training pants are sold. An Italian company that builds a machine and sells it to an American company – which uses the machine in Pennsylvania to manufacture products sold throughout the United States – is not automatically subject to specific jurisdiction in each state where the products are sold. Such a result would offend the traditional notions of fair play and substantial justice. More is required to find that a foreign machine manufacturer has purposely availed itself to the jurisdiction of a specific state.

But K-C does not have more. The fact that Fameccanica employees traveled to Wisconsin and testified at a preliminary injunction hearing in a case between First Quality and K-C does not show that Fameccanica has purposefully availed itself of the privilege of doing business in Wisconsin. The testimony related primarily to the employees' knowledge of prior art, not to a

dispute between K-C and Fameccanica. K-C's claims against Fameccanica do not arise out of the testimony offered in Wisconsin. At best K-C's claims against Fameccanica have only a tangential relationship to the Wisconsin testimony of the Fameccanica employees. Finally, the presence of a company's employee in a state – standing alone – is insufficient to justify specific personal jurisdiction where, as here, the employee was in the forum for a few days in order to testify in a court hearing.

The fact that Fameccanica assisted First Quality in re-designing its Pennsylvania machine to avoid infringing on K-C's patent also falls short of showing that Fameccanica aimed its actions at Wisconsin. Even assuming Fameccanica knew that First Quality would sell training pants made on Fameccanica's re-designed machines to retailers throughout the United States does not support the argument that Fameccanica purposefully availed itself of *Wisconsin* laws.

K-C also contends that First Quality's assertion of a joint defense privilege in K-C's other lawsuit against First Quality is relevant to whether this Court has jurisdiction over Fameccanica. To that end K-C has submitted a privilege log regarding First Quality's and Fameccanica's joint efforts to modify First Quality's training pant production lines. (Dkt. 29.) But even assuming that Fameccanica undertook actions to modify its machinery with full knowledge that First Quality was making refastenable training pants, and with full knowledge that First Quality and K-C were involved in patent infringement litigation before this Court concerning sales of First Quality's refastenable training pants in Wisconsin and other states, it does not follow that Fameccanica specifically directed its activities *at Wisconsin*. Ultimately, as explained more fully below, this Court lacks specific personal jurisdiction over Fameccanica because the Italian company has not targeted its activities at Wisconsin.

## 2. Effects Test

I turn, then, to K-C's argument that Fameccanica is subject to jurisdiction in Wisconsin under the effects test of *Calder v. Jones*, 465 U.S. 783 (1984) because the effects of Fameccanica's intentional actions were aimed at, and caused harm in, Wisconsin. (K-C Br., Dkt. 19 at 15-16.) K-C's conclusion that the "brunt" of the purported harm has been suffered in Wisconsin cannot be supported by the evidence, even drawing every inference in K-C's favor. While "patent infringement occurs where allegedly infringing sales are made," *N. Am. Philips Corp. v. Am. Vending Sales, Inc.,* 35 F.3d 1576, 1578-79 (Fed. Cir. 1994), K-C has not argued that Wisconsin is the determinative market for training pants or even that the impact of the Wisconsin sales was higher than the impact of sales in other states. Also, the fact that K-C has some corporate offices in Wisconsin does not show that the "brunt" of the harm has been suffered here.

## 3. Stream of Commerce

K-C contends that Fameccanica is subject to "stream of commerce" jurisdiction in Wisconsin. (K-C Br., Dkt. 19 at 16-19.) K-C and Fameccanica dispute whether the "stream of commerce" theory requires a corporation to put its *own* products into the stream of commerce. Several cases have found jurisdiction over corporations that sold component parts to a manufacturer who assembled the components into finished products that were eventually sold in the applicable forum state. *See e.g. LG.Phillips LCD Co. v. Chi Mei Optoelectronics Corp.,* 551 F. Supp.2d 333, 340-41 (D. Del. 2008). But such cases are distinguishable from the undisputed facts here: First Quality used a Fameccanica machine to manufacture training pants which First Quality sold. The act of providing machinery used to assemble final products is not akin to the act of providing component parts used to assemble final products.

A very recent United States Supreme Court decision guides my analysis of specific jurisdiction. In *J.McIntyre Machinery, Ltd. V. Nicastro,* No. 09-1343, 564 U.S. \_\_\_ (2011) the Supreme Court held that a machine manufacturer from the United Kingdom was not subject to personal jurisdiction in New Jersey even though one of its machines ended up in the state. Like Fameccanica, the foreign company did not target its machine at a specific state. The Supreme Court concluded that the "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id.* at 7. Here, Fameccanica's connection to Wisconsin is even more remote than the English company's actions related to New Jersey at issue in *J.McIntyre* insofar as the English company's own machine ended up in New Jersey but Fameccanica's own products are not in Wisconsin. Even assuming that Fameccanica expected or knew that First Quality would sell training pants in Wisconsin does not mean that *Fameccanica's* actions were specifically directed at Wisconsin. As the Supreme Court stated: "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 8. The evidence K-C seeks thorough jurisdictional discovery, even if obtained, would not establish that Fameccanica "engaged in conduct purposefully directed at" Wisconsin. *Id.* at 11. Fameccanica's knowledge of K-C's suit against First Quality is not an action Fameccanica took directed at Wisconsin. Fameccanica's knowledge that two employees came to Wisconsin to testify in that other case does not show that Fameccanica directed activities at Wisconsin. And Fameccanica's efforts to help First Quality design around K-C's patent took place in Pennsylvania; if anything such actions are directed at the entire United States market, not specifically at Wisconsin.

**CONCLUSION**

In sum, Fameccanica has extremely limited contacts with Wisconsin. The Italian company has not purposefully availed itself of the privilege of doing business in Wisconsin and, accordingly, Fameccanica's motion to dismiss for lack of personal jurisdiction (Dkt. 7) is **granted.**

Dated this ___1st___ day of July, 2011.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge